IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOIS L. REARICK,<br>　　Plaintiff<br><br>　　v.<br><br>CLEARWATER 2008 NOTE<br>PROGRAM, LLC,<br>　　Defendant | :<br>:<br>:　No. 4:15-cv-02265<br>:<br>:<br>:　(Judge Kane)<br>:<br>:<br>: |

## MEMORANDUM

This matter is before the Court on a renewed petition to compel arbitration and motion to dismiss or, alternatively, motion to stay, filed by Defendant Clearwater 2008 Note Program, LLC. (Doc. No. 16.) For the reasons provided herein, the Court will grant Defendant's motion to compel arbitration and will dismiss this case.

### I.　BACKGROUND

Plaintiff Lois L. Rearick commenced the above-captioned breach of contract action on November 30, 2015, by filing a complaint against Defendant Clearwater 2008 Note Program, LLC, an Idaho limited liability company, for the non-payment of the principal and interest on a $200,000.00 promissory note that Plaintiff and her late husband (collectively referred to herein as the "Rearicks"), purchased from Defendant. (Doc. No. 1 ¶¶ 7, 13.)

In her complaint, Plaintiff alleges that Robert Nalisnick, an investment officer employed by Defendant, solicited the Rearicks to finance Defendant's various acquisition and development projects in the Pacific Northwest through the sizeable investment in the promissory note program. (Doc. No. 1 ¶¶ 5-8.) Enticed by Mr. Nalisnick's representations of a low-risk investment that would generate a high return, the Rearicks agreed to participate in Defendant's promissory note program, purchasing a $200,000.00 interest bearing note yielding a nine percent

1

(9%) annual return on investment with a maturity date of December 31, 2015. On or about October 9, 2008, the Rearicks executed an agreement memorializing their subscription for the purchase of the note, and mailed the signed Subscription Agreement to Defendant along with a check in the amount of $200,000.00. Consonant with its acceptance of the Subscription Agreement, Defendant issued the Rearicks a certificate of ownership evidencing the purchase of the note.

Plaintiff avers that the note initially generated monthly interest payments of $1,500.00. However, beginning in November of 2011, the Rearicks observed a noticeable reduction in the monthly interest payments. By February of 2012, the Rearicks were no longer receiving monthly interest payments from Defendant. By the complaint's allegations, Plaintiff has suffered investment losses totaling $273,900.00, representing the outstanding principal balance on the note plus interest.

On March 4, 2016, Defendant filed a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2, 4, and to dismiss under Federal Rule of Civil Procedure 12(b)(6), or alternatively, to stay the action pursuant to 9 U.S.C. § 3, based on the executed Subscription Agreement's mandatory arbitration clause requiring Plaintiff to submit to binding arbitration in Boise, Idaho in accordance with applicable Idaho law and the procedures set forth by the American Arbitration Association. (Doc. No. 7 at 2.) Specifically, the arbitration clause, contained in numbered paragraph 11 of the Subscription Agreement, states as follows:

> 11. I hereby covenant and agree that any dispute, controversy or other claim arising under, out of or relating to this Agreement or any of the transactions contemplated hereby, or any amendment thereof, or the breach or interpretation hereof or thereof, shall be determined and settled in binding arbitration in Boise, Idaho, in accordance with applicable Idaho law, and with the rules and procedures of The American Arbitration Association. The prevailing party shall be entitled to an award of its reasonable costs and expenses, including, but not limited to, attorneys' fees, in addition to any other available remedies. Any award rendered therein shall be final and binding on each and all of the

parties thereto and their personal representatives, and judgment may be entered thereon in any court of competent jurisdiction. BY EXECUTING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ALL DISPUTES DECIDED BY NEUTRAL ARBITRATION, YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE SUCH DISPUTES LITIGATED IN A COURT OR JURY TRIAL, AND YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE. BY EXECUTING THIS AGREEMENT, YOU HEREBY CONFIRM THAT YOUR AGREEMENTS TO THIS ARBITRATION PROVISION IS VOLUNTARY.

(Doc. No. 1-4 at 4).

According to Defendant, Plaintiff's precipitous filing of the lawsuit contravened the mandatory arbitration provision, warranting an order from this Court compelling arbitration pursuant to the Subscription Agreement, and dismissing the above-captioned case. (Id. at 3.) In opposition to Defendant's initial motion to compel arbitration, Plaintiff raised a number of challenges attacking the validity and enforceability of the Subscription Agreement, including that: (1) the Subscription Agreement was not executed by Defendant but rather, by an entity known as Clearwater REI, LLC; (2) Defendant's antecedent breach of the Subscription Agreement excuses her performance thereunder; (3) she lacked sufficient sophistication to understand the Subscription Agreement; (4) participation in arbitration in Idaho would be inconvenient; and (5) the Subscription Agreement is unenforceable and unconscionable under Idaho law. (Doc. Nos. 8 at 1-2; 12.) Plaintiff requested in her oppositional brief that the Court order limited discovery relative to the question of arbitrability. On March 28, 2016, following a telephonic case management conference with the parties, this Court denied Defendant's motion to compel arbitration without prejudice to its filing of a renewed motion to compel arbitration upon the expiration of a court-imposed, ninety-day discovery period in order to permit the parties to conduct limited discovery as to the issue of arbitrability. (Doc. No. 13.)

3

On August 1, 2016, the Court received and docketed a letter from Plaintiff's counsel, advising the Court that the parties had completed limited discovery on the question of arbitrability, and urging the Court to schedule a joint case management conference. (Doc. No. 15). That same day, however, Defendant filed a renewed motion to compel arbitration. (Doc. No. 16).[1] Having been fully briefed, this matter is now ripe for disposition.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs the validity, irrevocability, and enforcement of agreements to arbitrate. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 25 n.32 (1983) ("[The FAA] creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate . . . ."). Enacted to reverse longstanding "judicial hostility to arbitration agreements," the FAA embodies a "strong federal policy in favor of resolving disputes through arbitration" by placing "arbitration agreements on equal footing with other contracts . . . ." Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 67 (2010) (citations omitted). Questions concerning the interpretation and construction of arbitration agreements are determined by reference to the FAA, which provides, in relevant part, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

---

[1] On January 30, 2017, Plaintiff's counsel entered a suggestion of death on the record, indicating that Plaintiff had passed away during the pendency of the proceedings. (Doc. No. 25.) Plaintiff's counsel moved to substitute the co-executors of Plaintiff's estate, Amy J. Bowersox and James R. Rearick (hereinafter "Plaintiffs"), for Plaintiff, pursuant to Federal Rule of Civil Procedure 25(a)(1). (Doc. Nos. 27, 28.) On April 13, 2017, the Court granted the motion to substitute. (Doc. No. 29.)

The FAA reflects the fundamental principle that "'[a]rbitration is strictly a matter of contract between the parties.'" Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 771 (3d Cir. 2013) (quoting Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)). Indeed, the FAA requires federal courts to enforce agreements to arbitrate according to their terms, and "confers only the right to obtain an order directing that "arbitration proceed in the manner provided for in [the parties'] agreement." Par–Knit Mills, Inc., 636 F.2d at 54 (emphasis omitted). Consequently, the exercise of the district court's discretion in this context is limited to ascertaining whether the parties entered into a valid agreement to arbitrate. Certain Underwriters at Lloyd's London v. Westchester Fire Insurance Co., 489 F.3d 580, 585 (3d Cir. 2007) (holding that the question of arbitrability—i.e., whether the parties agreed to submit a particular dispute to arbitration—is an issue for judicial determination). Once an arbitration clause is deemed by a federal court to be a valid and enforceable agreement, the merits of the controversy are referred for disposition by an arbitrator. Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir.1997). In the event, however, "that the making of the arbitration agreement is in issue, then 'the court shall proceed summarily to the trial' of that issue." Guidotti, 716 F.3d at 771 (quoting Par–Knit Mills, Inc., 636 F.2d at 54).

Accordingly, when presented with a motion to compel arbitration, a district court is tasked with conducting a two-step inquiry into "(1) whether there is a valid agreement to arbitrate between the parties and, if so, (2) whether the . . . dispute in question falls within the scope of that valid agreement." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 220 (3d Cir. 2014) (quoting Century Indem., 584 F.3d at 527). "The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005). By its terms, the FAA

5

does not confine the court's inquiry to defects in contract formation, but also permits the court to consider those generally applicable defenses that "exist at law or in equity for the revocation of any contract," such as fraud, duress, and unconscionability. 9 U.S.C. § 2.

The United States Court of Appeals for the Third Circuit has clarified the appropriate standard to be employed by district courts evaluating the enforceability of an agreement to arbitrate under the two-step analysis. Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764 (3d Cir. 2013). Specifically:

> [W]hen it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.' But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then 'the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question.' After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

Guidotti, 716 F.3d at 776 (internal citations omitted).

Given the procedural posture of this case, the Court applies the summary judgment standard to Defendant's renewed motion to compel arbitration, as it previously allowed for limited discovery on the question of arbitrability. Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether

6

the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007). In deciding a motion for summary judgment, the court need not accept allegations that are merely conclusory in nature, whether they are made in the complaint or a sworn statement. Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Moreover, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. Anderson, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." Id.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322. With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some

7

metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

As noted above, in its assessment of whether a party may be compelled to arbitrate, the Court must determine (1) whether there is a valid agreement to arbitrate between the parties, and if so, (2) whether the dispute between the parties falls within the scope of the valid agreement. Flintkote, 769 F.3d at 220 (quotation omitted).[2]  The Court considers each of these factors in turn.

### A. VALID AGREEMENT TO ARBITRATE

In its renewed motion to compel arbitration, Defendant argues that the Subscription Agreement contains a valid arbitration provision that obligates Plaintiff to submit to binding arbitration in Boise, Idaho.  (Doc. No. 26.)  Defendant further maintains that Plaintiff's challenges to the validity of the arbitration provision under the substantive law selected by the parties to govern the Subscription Agreement, that is, Idaho law, are unfounded.  (Id.)  Plaintiff opposes the renewed motion to compel on the grounds that: (1) Plaintiff has yet to depose Mr. Nalisnick regarding whether the choice of law, choice of forum, and arbitration clauses were discussed with the Rearicks, as that issue may potentially support a theory of unconscionability; (2) the arbitration clause is unenforceable due to the possibility that Plaintiff may incur prohibitively excessive costs in the arbitration process;  and (3) the arbitration clause is substantively unconscionable because it expressly waives Plaintiff's limited appellate rights guaranteed by the FAA.  (Doc. No. 21.)

---

[2] The parties agree that Idaho law governs the agreement.  (Doc. Nos. 21 at 3-5; 22 at 4-11).

8

1. **Deposition of Mr. Nalisnick**

In opposition to Defendant's renewed motion to compel arbitration, Plaintiff submits that she "intends to depose the local agent Nalisnick as to his interaction with the Rearicks," as she "avers and believes that the choice of law, choice of forum and arbitration clauses were never discussed." (Doc. No. 21 at 2.)

The Court finds Plaintiff's argument regarding her entitlement to additional discovery to be wholly unavailing. As this Court noted supra, at the outset of this litigation, Plaintiff requested,[3] and was afforded, a reasonable opportunity to conduct arbitrability-related discovery to support her opposition to any renewed motion to compel arbitration, in accordance with prevailing Third Circuit jurisprudence. Rather than move for an extension of the discovery deadline prior to the close of discovery, Plaintiff's counsel, at the Court's prompting, instead represented to the Court via letter dated July 31, 2016, that "[d]iscovery with respect to the jurisdictional issue has been completed," which precipitated Defendant's filing of its renewed motion to compel arbitration. (Doc. No. 15.)

Curiously, against this procedural backdrop, Plaintiff neither reconciles for the Court the apparent discrepancy with regard to her propounded need for discovery, nor offers an explanation as to why she was unable to secure the deposition of Mr. Nalisnick within the ninety-day discovery period. To stay disposition of Defendant's renewed motion to compel arbitration at this juncture in the proceedings based solely upon Plaintiff's untimely request[4] to

---

[3] Notably, the arguments Plaintiff raises in opposition to Defendant's renewed motion to compel arbitration, including her statement of intent to depose Mr. Nalisnick, are largely borrowed wholesale from her brief in opposition to Defendant's initial motion to compel.

[4] While Plaintiff does not explicitly request the Court to stay the renewed motion to compel and reopen discovery, the Court construes the argument as such given that the deadline for discovery has expired.

reopen the discovery period would be inappropriate, as Plaintiff has failed to establish good cause for her failure to comply with the discovery deadline. Indeed, Plaintiff has not satisfied her burden of demonstrating good cause justifying modification of a scheduling order by showing that she exercised due diligence in pursuing discovery but was precluded from deposing Mr. Nalisnick due to circumstances beyond her control. See Fed. R. Civ. P. 16(b); Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 614 F.3d 57, 84 (3d Cir. 2010); Perez v. Great Wolf Lodge of the Poconos LLC, No. 3:12-CV-01322, 2017 WL 559704, at *3 (M.D. Pa. Feb. 10, 2017) ("[C]ourts have defined good cause to include circumstances beyond the control of a party.") (citing Courtney v. Ivanov, No. CV 3:13-227, 2016 WL 1367755, at *2 (W.D. Pa. Apr. 6, 2016)). Accordingly, the Court declines any invitation to defer its consideration of Defendant's pending motion to compel arbitration in order to permit Plaintiff to depose Mr. Nalisnick.

### 2. Prohibitive costs associated with arbitration

Plaintiff also argues that the arbitration clause is unenforceable due to the risk that she may be forced to assume excessive arbitration costs by pursuing her breach of contract claim in an arbitral forum in Boise, Idaho.

A party seeking "to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). Specifically, the party opposing arbitration must proffer credible and individualized evidence of (1) the anticipated expenses relating to the specific arbitration at issue, and (2) the party's inability to pay those projected costs of arbitration. Hall v. Treasure Bay V.I. Corp., 371 F. App'x 311, 313 (3d Cir. 2010) ("Thus, a party seeking to declare a provision awarding arbitration costs unenforceable

must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration."). The arbitration clause will only be deemed unenforceable if it inhibits Plaintiff from effectively vindicating her rights in the arbitral forum. See Murphy v. Mid-West Nat'l Life Ins. Co. of Tenn., 78 P.3d 766, 768 (Idaho 2003) (holding that if "the salutary purposes usually associated with arbitration[,] which is supposed to be an inexpensive and rapid alternative to prolonged litigation[,]" would not be advanced by the arbitration agreement, then an arbitration agreement may be revoked).

In support of her position that the Court should declare invalid the arbitration provision due to the possibility that she might incur prohibitive costs in connection with being subject to arbitration in Boise, Idaho, Plaintiff produces the affidavit of guardian Amy Bowersox, dated September 12, 2016, attesting to the estimated expenses the Rearicks would likely incur if required to submit to arbitration in Boise. (Doc. No. 21-1 at 15.) Together with the affidavit is a print-off of the search results from www.expedia.com comparing available airline fares out of the University Park regional Airport in Centre County, Pennsylvania to Boise for the period between September 2013 through February 2014, and an e-mail response from a law firm in Boise, confirming with Plaintiff's counsel the $5,000.00 retainer required to secure representation for the Rearicks. (Doc. No. 21-1 at 13.) Relying on this evidence, Plaintiff argues that she would be "burdened with" assuming the costs associated with securing counsel in Idaho, subpoenaing Mr. Nalisnick, travelling to Boise, and arbitrating through the American Arbitration Association. (Doc. No. 21 at 3.)

Even assuming that Plaintiff has proffered appropriate evidence indicative of her estimated expenses,[5] the lack of any individualized evidence in the record supporting Plaintiff's claimed financial inability to assume the costs of the arbitration process compels a finding that Plaintiff has failed to establish the cost-prohibitive nature of submitting her claims to a compulsory arbitration process. Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 218 (3d Cir. 2003); Blair v. Scott Specialty Gases, 283 F.3d 595, 608 (3d Cir.2002); Gillespie v. Colonial Life & Acc. Ins. Co., No. CIV A 08-689, 2009 WL 1885935, at *5 (W.D. Pa. June 30, 2009) ("Other than the 1099 MISC forms showing her 2008 income, and compensation/commission statements showing 2009 income to date, [p]laintiff has failed to provide any factual statements, let alone any documentation in support thereof, to show that from May 2006 to May 2008, her net income after her expenses/debts was such that she was unable to afford the costs of arbitration.").

---

[5] While the Supreme Court of the United States has not articulated a standard "for how detailed the showing of prohibitive expenses must be to support the conclusion that the provision, at minimum, is unenforceable," courts addressing the issue have focused, in addition to the claimant's ability to pay the arbitration fees and costs, on the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as would deter the litigant from bringing her claims. Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 217 (3d Cir. 2003) (citing Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 673 n. 15 (6th Cir. 2003)); Bradford v. Rockwell Semiconductor Systems Inc., 238 F.3d 549 (4th Cir. 2001). Adhering to this case-by-case inquiry, and noting the Subscription Agreement's silence on the matter of arbitration costs, the Court questions whether Plaintiff has produced sufficient documentation of her anticipated arbitration costs that would satisfy her initial evidentiary burden. Indeed, notwithstanding Plaintiff's estimation of the cost of having to travel to the arbitration, retain local counsel, and produce Mr. Nalisnick as a witness, the record is devoid of evidence as to the filing fees, the arbitrator fees, the hearing fees, the hearing room rental, and other arbitration-related necessities—price points relevant to conducting a cost-differential analysis. See Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002) (remanding the matter in light of plaintiff's affidavit of her limited financial capacity, the evidence that the AAA would preside over the arbitration, and the AAA rules requiring the parties to bear equally the costs of the arbitrator's fees, to conduct limited discovery into the rates charged by the AAA and the approximate length of similar arbitration proceedings). To that end, the Court is hard pressed to determine how the cost of arbitration, totaling $8,600.00 by Plaintiff's calculation, would preclude her from vindicating her rights, given that she has valued her breach of contract claim at over $273,000.00. Even if the $8,600.00 in costs were doubled, the cost of arbitrating would still be less than 6% of the amount Plaintiff could potentially recover.

Accordingly, the Court finds that Plaintiff has failed to adduce substantiated evidence of prohibitive arbitration costs sufficient to invalidate the arbitration clause.

### 3. Waiver of Appellate Rights

Finally, Plaintiff contends that the arbitration clause is substantively unconscionable because it divests the federal court of jurisdiction to review arbitration awards, including review under 9 U.S.C. § 10 of the FAA.[6] (Doc. No. 21 at 5). Specifically, Plaintiff construes the following language contained in the arbitration provision as expressly precluding judicial review under the FAA:

> Any award rendered therein shall be final and binding on each and all of the parties thereto and their personal representatives, and judgment may be entered thereon in any court of competent jurisdiction. BY EXECUTING THIS AGREEMENT, YOU ARE AGREEING TO HAVE ALL DISPUTES DECIDED BY NEUTRAL ARBITRATION, YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE SUCH DISPUTES LITIGATED IN A COURT OR JURY TRIAL, AND YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE, BY EXECUTING THIS AGREEMENT, YOU HEREBY CONFIRM THAT YOUR AGREEMENTS TO THIS ARBITRATION PROVISION IS VOLUNTARY.

(Doc. No. 1-4 at 4.) Defendant, in response to Plaintiff's opposition, disputes that the arbitration provision is unconscionable as it pertains to Plaintiff's appellate rights. Defendant emphasizes that the arbitration clause's waiver of Plaintiff's "judicial rights to discovery and appeal," does not, by its plain language, eliminate judicial review of arbitration awards pursuant to the grounds enumerated in the FAA. Rather, Defendant interprets the provision as extinguishing "the rights

---

[6] 9 U.S.C. § 10 limits judicial review of an arbitration award to certain enumerated grounds. Specifically, a court is authorized to vacate, modify, or correct an arbitration award upon the application of a party to the arbitration where: (1) "the award was procured by corruption, fraud, or undue means; (2) [ ] there was evident partiality or corruption in the arbitrators, or either of them; (3) the arbitrators were guilty of misconduct . . . or (4) [ ] the arbitrators exceeded their powers . . . ." 9 U.S.C. § 10.

of the parties as they would exist if their case was tried by the <u>judicial</u> system. In other words, under the agreement[,] Plaintiff cannot appeal a decision from the arbiter for the many reasons a civil court litigant would be able to appeal a decision of a trial court." (Doc. No. 22 at 10.)

Even assuming that the arbitration clause at issue here could be read as containing non-appealability language foreclosing any judicial review of the arbitration that could support a finding of substantive unconscionability,[7] Plaintiff has made no showing of procedural unconscionability sufficient to render the arbitration provision unenforceable. Indeed, for a contract or contractual provision to be voided as unconscionable under Idaho law, "it must be <u>both</u> procedurally and substantively unconscionable. Procedural unconscionability relates to the bargaining process leading to the agreement while substantive unconscionability focuses upon the terms of the agreement itself." Lovey v. Regence BlueShield of Idaho, 72 P.3d 877, 882 (Idaho 2003) (emphasis added). Here, Plaintiff has not suggested, let alone demonstrated, that she was "prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all," as required to prove procedural unconscionability. <u>Id.</u> Thus, the Court finds that Plaintiff has failed to produce

---

[7] The Court is informed by the United States Court of Appeals for the Ninth Circuit's holding in <u>In re Wal-Mart Wage & Hour Employment Practices Litigation</u>, 737 F.3d 1262, 1268 (9th Cir. 2013), that the grounds for judicial review under the FAA are not waivable, or subject to elimination by contract, as permitting parties to contractually eliminate judicial review of arbitration awards would "not only run counter to the text of the FAA, but would also frustrate Congress's attempt to ensure a minimum level of due process for parties to an arbitration." <u>Id.</u> While the Court recognizes that parties cannot contract to preclude judicial review of an arbitration award as set forth in the FAA, the Court cannot conclude that the contractual provision here is reasonably subject to the interpretation advanced by Plaintiff and thus, is substantively unconscionable. Indeed, the Court agrees with Defendant that the plain language of the arbitration provision provides that Plaintiff agrees to forgo litigating her claim in federal court. The arbitration clause does not eliminate the FAA's prescribed standards governing review of arbitration awards.

14

evidence from which the Court can conclude that the arbitration clause is procedurally and substantively unconscionable.

Accordingly, the Court finds that Plaintiff has failed to adduce sufficient evidence to create a genuine issue of material fact as to the validity of the arbitration provision contained in the Subscription Agreement.

B.        SCOPE OF THE AGREEMENT

As a final matter, the Court must resolve whether the dispute between the parties falls within the scope of that valid agreement. Flintkote, 769 F.3d at 220 (quotation omitted). As to the scope of the arbitration clause, Plaintiff proposes that, because Defendant has conceded in its correspondence with Plaintiff that it cannot meet its obligations under the Subscription Agreement, no controversy, dispute, or claim remains to be arbitrated. (Doc. No. 21 at 4.) Defendant objects to Plaintiff's characterization of her claim, and contends that Plaintiff's breach of contract claim "unquestionably" arises under, or relates to, the arbitration clause. (Doc. No. 22 at 9). Here, the arbitration provision governs "any dispute, controversy or other claim arising under, out of or relating to this [Subscription] Agreement, or any of the transactions contemplated hereby, or any amendment thereof, or the breach or interpretation hereof or thereof . . . ." (Doc. No. 1-4 at 4). The Court agrees with Defendant that Plaintiff's breach of contract claim undoubtedly arises under, and relates to, the Subscription Agreement. Accordingly, the Court finds that the specific dispute falls within the substantive scope of the Subscription Agreement.

IV.        **CONCLUSION**

In conclusion, Plaintiff has failed to sustain her burden of presenting evidence of a generally applicable contractual defense under state contract law sufficient to invalidate the arbitration clause, and has failed to substantiate her claim that the dispute at issue is not

15

contemplated by the Subscription Agreement. Accordingly, the Court will grant Defendant's motion to compel arbitration (Doc. No. 16), as it finds that the valid and enforceable Subscription Agreement governs the present controversy. An appropriate Order follows.